## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| STEPHANIE BOND, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | Case No. 11-2059 |
| DAN WALSH, Champaign County ) | |
| Sheriff, et al., ) | |
| ) | |
| Defendants. ) | |

# REPORT AND RECOMMENDATION

In February 2011, Plaintiff Stephanie Jane Bond filed a Complaint (#1) on behalf of herself and her four minor children against the Champaign County Sheriff and individual officers, and the Illinois State Police and individual officers.[1]  Plaintiff alleges a violation of her constitutional right to equal protection of the laws (42 U.S.C. §1983), a violation of the Illinois Domestic Violence Act (hereinafter "IDVA"), and state law tort claims for intentional infliction of emotional distress.  Federal jurisdiction is based on federal question pursuant to 28 U.S.C. §1331, and the Court exercises supplemental jurisdiction over state law claims pursuant to 28 U.S.C. §1367.

In April 2011, the Champaign County Defendants filed Motion to Dismiss (#35) with accompanying Memorandum of Law in Support of Defendants' Motion to Dismiss (#36). Plaintiff subsequently filed Plaintiff's Response to Champaign County Sheriff Defendants' Motion to Dismiss (Docket 35 & 36) With Incorporated Memorandum of Law (#40).  After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. §636(b)(1)(B), that the Motion To Dismiss **(#35)** be **DENIED**.

### I. Background

The following background is taken from Plaintiff's complaint.  Plaintiff Stephanie Jane Bond and now deceased husband, Gabriel Omo-Osagie, shared a marital residence with their

---

[1]This Court subsequently granted Plaintiff's motion to withdraw claims on behalf of her minor children.

four minor children. In March 2004, Defendants received a 911 call that Omo-Osagie was armed and suicidal. Officers visited the residence and observed loaded handguns and other firearms, as well as ammunition. Plaintiff notified the officers of incidents of domestic violence perpetrated against her by Omo-Osagie. The Defendants did not remove the guns, nor did they arrest Omo-Osagie.[2]

In November 2009, a relative of Omo-Osagie informed Defendants that he was concerned for the children's safety. Plaintiff informed Defendants that Omo-Osagie had battered her. On November 9, Defendants arrested Omo-Osagie for domestic battery and unlawful restraint. Plaintiff received an Emergency Order of Protection against Omo-Osagie. At the same time, Plaintiff called Defendants, informing them that Omo-Osagie was in possession of stolen guns and without a FOID card. Plaintiff asked Defendants to remove the guns. Champaign County officers stated a policy of not removing guns without a court order, and refused the request. At that time Plaintiff contacted Illinois State police to see if they would remove the guns. Defendants did not remove the guns, and one defendant indicated to a colleague that Bond may be "crying wolf."

Throughout November, Defendants did not remove the guns despite Plaintiff's repeated requests, though they were aware that Omo-Osagie was dangerous and unstable. On November 21, Omo-Osagie attempted suicide by walking into traffic, and then evaded Defendants' attempts to locate him for three days. On November 27, Omo-Osagie admitted to Defendants that he had violated the Order of Protection on multiple occasions, and that he had made threatening phone calls to Plaintiff. However, when Omo-Osagie would not present himself to Defendants, Defendants said they had better things to do than track him down.

On February 27, 2010, Omo-Osagie shot Plaintiff three times. Soon after he committed suicide with the same gun. Plaintiff survived the attempted murder. In March 2010, an Illinois State Police officer filed a report indicating a need to follow up on stolen guns formerly

---

[2]For the purposes of this Report and Recommendation, the Court will refer to the various individual Champaign County Sheriffs officers collectively as "Defendants."

possessed by Omo-Osagie. In May 2010, the Illinois State Police removed a stolen handgun from Plaintiff's residence.

## II. Standard

The purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must give fair notice of what the claim is and the grounds upon which it rests. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). However fair notice is not enough by itself; in addition, the allegations must show that it is plausible, rather than merely speculative, that the plaintiff is entitled to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

When considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations contained in the pleadings. *Venture Assocs. Corp v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). The Court must treat all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (requiring plausible grounds for inferences if those inferences are to sustain a complaint). In considering the plaintiff's factual allegations, the Court should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The application of the notice pleadings is a context-specific task, in which the height of the pleading requirement is relative to the circumstance. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)).

## III. Discussion

The following discussion considers Defendants' arguments in the order presented in Defendants' brief. Defendants move to dismiss Counts I through VI.

*A. Count I - Violation of Equal Protection, Against Defendant Champaign County Sheriff*

Defendants move to dismiss Count I on three separate bases. Defendants argue that Plaintiff does not adequately indicate the grounds upon which her equal protection claim rests, Plaintiff's complaint fails to identify what policy is the moving force behind her injuries, and Plaintiff's demand for punitive damages is not supported by law. Defendants further argue that any allegations of wrongdoing by Defendants that occurred prior to February 25, 2009, should be stricken from the complaint due to the applicable statute of limitations.

*1. Adequacy of Pleading and Sufficient Notice*

Defendants claim that the Complaint fails to give fair notice of what the claim is, specifically by failing to state how the policy regarding gun removal was discriminatory or how the victim was treated differently. In Plaintiff's complaint, Plaintiff alleges that Defendants refused to remove guns from the marital residence without a court order.

A municipality may not be held liable simply because it employs a tortfeasor; "in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The language of §1983 requires a government to "cause" an employee to violate another's constitutional rights under color of an official policy, practice, or custom. *Id*. Plaintiff must allege that such a policy was in place at the time of the injury and that the policy was discriminatory. Additionally, to survive a motion to dismiss, Plaintiff must also plead facts sufficient to state a plausible claim for relief in support of the allegations. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

Here, Plaintiff lists six policies or practices in her complaint under Count I that she alleges are discriminatory policies that violated her right to equal protection. (#1, p. 39-40, ¶ 242). For example, she alleges Defendants engaged in a policy, pattern or practice of treating requests from victims of domestic violence with less priority than other crimes. Each alleged discriminatory policy is specific in its accusation, detailing policies such as ignoring possession of stolen guns and FOID card violations by perpetrators of domestic violence. These are not "threadbare recitals" or conclusory statements, rather Plaintiff has alleged specific policies or practices were in place at the time of the injury to Plaintiff. At this point in the proceedings, the

4

Court is satisfied that Plaintiff has sufficiently pled facts to allege a plausible claim for relief, and has thus satisfied her pleading burden.

*2. Moving Force Behind Alleged Injury*

Defendants next argue that Plaintiff fails to allege proper causation between the policy and the injuries suffered. "To maintain a Section 1983 claim against a municipality, one must establish . . . the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002). The action must be deliberate and the policy must be attributable to the municipality itself as the "moving force," mere negligence will not suffice. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 400 (1997). Causation is left to the fact finder, and questions of causation in §1983 claims "are generally best left to the jury." *Young v. City of Providence*, 404 F.3d 4, 23 (1st Cir. 2005)*; see also Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840-41 (1996).[3] Pleading is sufficient so long as a reasonable juror could find causation. *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1152 (7th Cir. 2010).

Defendants claim the Complaint does not document causation, consequently the Complaint is insufficiently pled, and must be dismissed. However, as discussed above, Plaintiff has properly alleged certain discriminatory policies and practices. She further alleges that these policies and practices caused her to be shot by Omo-Osagie and to suffer injury. There is no requirement of proving the causation exists at this stage; such a requirement would usurp the role of the fact finder. *Sofec*, 517 U.S. at 841. At this point, Plaintiff has alleged that Defendants, operating under a discriminatory policy or practice, refused to remove stolen guns without a court order. Omo-Osagie used firearms that injured the plaintiff. Because Defendants allegedly followed policies of refusing to assist victims of domestic violence, ignoring FOID violations, and disregarding gun removal requests, Defendants did not remove the guns or arrest Omo-Osagie, and the injury occurred. Causation has been sufficiently alleged; whether causation

---

[3]Other circuit courts have determined that causation under §1983 is evaluated under similar common-law standards. *Murray v. Earle*, 405 F.3d 278, 290 (5th Cir. 2005); *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005). The Seventh Circuit has held causation to be a question of fact for the jury for a common-law tort claim. *See, e.g.*, *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1152 (7th Cir. 2010) (proximate cause is an issue of fact for a jury); *Schwartz v. United States*, 70 F.3d 1274 (7th Cir. 1995).

5

actually exists is a question for the jury. *Id*. The Court therefore finds causation to be properly pled.

*3. Punitive Damages against Municipalities*

Defendants note that municipalities are immune from liability for punitive damages under §1983. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981). Plaintiff concedes this point. The Court therefore recommends that Defendants' request that claims for punitive damages against the Champaign Sheriff in his official capacity be stricken from the Complaint be granted.

*4. Statute of Limitations*

Defendants argue that the statute of limitations bars some of the acts and/or omissions that appear in the Complaint. Section 1983 claims in Illinois are governed by the two-year limitations period applicable to personal injury actions. *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005). Defendant asserts that because the Complaint was filed on February 25, 2011, any portion of the Complaint alleging acts or omissions by Defendants that occurred prior to February 25, 2009, should be stricken from the Complaint.

Defendant fundamentally misunderstands the operation of the statute of limitations. A statute of limitations prevents untimely claims against a defendant. It is not retroactive from the time of the complaint, but rather it looks forward from the date of injury. *Evans v. City of Chi.*, 434 F.3d 916, 934 (7th Cir. 2006). As the injury occurred on February 27, 2010, Plaintiff has filed her complaint in a timely manner.

*B. Count II - Violation of Equal Protection, Against Individual Champaign County Sheriff's officers.*

Defendants make three new arguments with respect to Count II that this Court has not already addressed in discussing Count I. First, Defendants argue that Plaintiff's complaint fails to allege and identify what specific actions by each of the fifteen individual defendants constitute a violation of Plaintiff's right to equal protection. Second, Defendants argue that Plaintiff has failed to allege that she is a member of a suspect class. Third, Defendants argue that they are entitled to qualified immunity.

6

In addition, Defendants make several arguments that mirror those brought with respect to Count I. Specifically, Defendants argue that Plaintiff fails to provide fair notice for her claims and the grounds upon which they rest, that Plaintiff fails to properly plead causation, and that portions of Plaintiff's complaint should be stricken due to the applicable statute of limitations. The Court has addressed these arguments with respect to Count I, and will not address them again with respect to Count II.

*1. Actions of Specific Defendants*

Defendants argue that, in suing individual officers for violation of constitutional rights, Plaintiff must establish personal involvement in actions that deprived the plaintiff of those rights. Defendants assert it is not sufficient to say that officers violated Plaintiff's rights without providing facts and details of individual incidents in which they occurred. Without these details, Defendants maintain that the individual officers are not given proper notice, and thus the complaint does not satisfy Rule 8 pleading requirements.

When properly pled, a complaint gives "the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The overriding principle of notice pleading requires only that a plaintiff provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). Because the federal system uses notice pleading rather than fact pleading, it is enough to lay out the possible grievance so the defendant may begin to investigate and prepare a defense. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009); *Tamayo*, 526 F.3d at 1085. A plaintiff's pleading burden should be commensurate with the amount of information available; he is not required to plead facts he has no ability to know. *Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010).

Defendants imply that Plaintiff must specifically plead what each individual officer did to personally deprive Plaintiff of her constitutional rights. The pleading standard established in *Twombly* (550 U.S. at 560-61) and its progeny is still fundamentally based on notice pleading. *Tamayo*, 526 F.3d at 1092-93 (indicating §1983 claims do not require facts beyond what is necessary to put defendants on notice). In a recent district court case, a plaintiff brought suit

7

against individual officers for deprivation of his constitutional rights. *Campbell v. City of Indianapolis*, No. 10-1079, 2011 WL 1134314 (S.D. Ind. Mar. 25, 2011). His complaint failed to specify what each officer did to infringe on these rights. *Id*. Regardless, the court denied a motion to dismiss, stating that there were sufficient facts to put the defendants on notice and to enable them to prepare a defense, even though specific details regarding their personal involvement were absent from the complaint. *Id*.

Similarly in this case, Plaintiff has pled facts sufficient to notify the Champaign County Sheriff's officers of the alleged incidents that deprived her of her constitutional rights. Simply because Plaintiff did not always match incidents with names does not mean Defendants are unaware of the allegations in the Complaint. Information that would allow her to match named officers with incidents is at this time unavailable for her to plead. She has alleged the incidents and indicated individuals from a closed group were responsible for the violation of her rights; this is sufficient for notice pleading. More detailed matching can be accomplished during discovery.

Furthermore, Plaintiff has requested leave to amend to clearly identify individual defendants by their names, to replace those instances where defendants have been identified by badge number. This request should be granted.

2. *Victims of Domestic Violence as a Suspect Class*

Defendants argue that Plaintiff is not a member of any suspect class. Defendants state that a victim must be part of a suspect class before strict scrutiny applies in analyzing an Equal Protection claim, and no case law supports Plaintiff's argument that victims of domestic violence are a suspect class.

Defendants largely rely on *McCauley v. City of Chi.*, No. 09-2604, 2009 WL 3055312 (N.D. Ill. Sept. 18, 2009) (unreported). In that case, the victim's boyfriend, Martinez, repeatedly abused her after being released from jail for murder. *McCauley*, 2009 WL 3055312 at *2. The victim was granted an order of protection, though Martinez continued to harass McCauley. *Id*. On April 5, 2008, Martinez shot McCauley following a church service. *Id*. She later died from the wounds, and her estate sued the City of Chicago for violation of McCauley's equal protection

rights. *Id*. at *3. Plaintiff presented no case law supporting the contention that domestic violence victims are a suspect class. *Id*. The court also did not find any supporting case law, and consequently dismissed the equal protection claim after analyzing it under the rational basis test. *Id*. at *4.

The court's holding in *McCauley* is not as helpful to Defendants' argument as it might appear. Concerning domestic violence victims' status as a suspect class for the purposes of equal protection, the court merely stated that no support was presented in favor of such a classification. At no point did it preclude the possibility that domestic violence victims could be considered a suspect class, nor does it cite any authority in opposition to the classification. It simply noted that Plaintiff failed to meet its burden of citing authority to support its proposition.

In that respect, *McCauley* differs greatly from the immediate case. Plaintiff has provided multiple cases that support consideration of domestic violence victims as a suspect class. *See Didzerekis v. Stewart*, 41 F. Supp 2d. 840, 842 (N.D. Ill. 1999); *McDonald v. City of Chi.*, No. 94-3623, 1994 WL 732865 (N.D. Ill. Dec. 23, 1994); *Moore v. City of Chicago Heights*, No. 09-3452, 2010 WL 148623 (N.D. Ill. Jan. 12, 2010); *Doe v. Calumet City*, N.E.2d, 498, 509 (Ill. 1994). As such, Plaintiff has presented adequate case law in support of her proposition, distinguishing this case from *McCauley*. For the purposes of pleading, the Court is satisfied that Plaintiff has met the necessary burden. The Court has addressed this issue in greater detail in its previous Report and Recommendation (#47).

*3. Qualified Immunity*

Defendants next assert that individual officers are entitled to qualified immunity. They contend Plaintiff has failed to show how conduct violated a constitutional right or that the right was established at the time of injury. Barring these details, Defendants are immune from suit. Plaintiff responds that qualified immunity does not apply because Counts I and II plead a constitutional violation that was established prior to the dates of allegations in the complaint.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Hill v. Shelander*,

992 F.2d 714, 717 (7th Cir. 1993). It is well established that discrimination in provision of protective services to disfavored minorities constitutes a violation of the Equal Protection Clause. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989) ("The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause.") This Court reads Plaintiff's complaint to allege a pattern or policy by the Defendants of discrimination in providing protection to victims of domestic violence. At this stage, Plaintiff is not required to prove that Defendants acted with a discriminatory motive. As such, this Court finds that the Complaint adequately alleges a constitutional violation, specifically of equal protection, and that the right was clearly established at the time of Plaintiff's injury. Defendants' motion to dismiss based on qualified immunity should be denied.

*C. Counts III & IV- Illinois Domestic Violence Act*

Defendants contend that Counts III and IV, brought under the Illinois Domestic Violence Act, should be dismissed. First, Defendants assert that they have immunity under the Illinois Tort Immunity Act (4/102). Second, Defendants contend that, even if the IDVA applies, it does not establish an open-ended duty for law enforcement officials to protect victims of domestic violence.

In addition, Defendants reassert their argument that the complaint provides insufficient notice, and they reassert their argument regarding the statute of limitations. Having addressed these arguments previously, the Court will not consider them again with respect to the IDVA counts.

*1. Immunity Under the Illinois Tort Immunity Act*

First, the Court considers the parties' arguments with respect to immunity. Defendants assert they are entitled to immunity under the Illinois Tort Immunity Act. Plaintiff responds that this Act is superceded by more specific immunity provisions in the IDVA itself, which state:

> Any act of omission or commission by any law enforcement officer acting in good faith in rendering emergency assistance or otherwise enforcing this Act shall not impose civil liability upon the law enforcement officer or his or her supervisor or employer, unless the act is a result of willful and wanton conduct.

750 ILCS 60/305. Plaintiff contends this language controls, rather than the provisions of the Illinois Tort Immunity Act. *Ries v. City of Chi.*, 950 N.E.2d 631 (Ill. 2011) (holding the more specifically applicable immunity controls); *see also Moore v. Green*, 848 N.E.2d 1015, 1027 (Ill. 2006). Based on this authority, the Court agrees that this immunity provision is the appropriate starting point for this Court's analysis.

The IDVA creates a duty to use reasonable means to protect victims of domestic violence, and some reasonable means are explicitly included in the statute. 750 ILCS 60/304(a). However, under the IDVA immunity provision, law enforcement officers acting in good faith are immune from liability unless their act in violation of the IDVA is a result of willful and wanton conduct. *Calloway v. Kinkelaar*, 659 N.E.2d 1322,1327 (Ill. 1995). Officers may not be liable under IDVA for mere negligence. *Id.* Here, Plaintiff has alleged that Defendants were willful and wanton in their failure to employ reasonable means to protect Plaintiff. Plaintiff has alleged specific dates, failures to act, and specific refusals to Plaintiff's requests for protection. Plaintiff alleges some examples of "reasonable steps" officers could have taken, including arresting Omo-Osagie, seizing stolen guns, and addressing FOID card violations. Therefore, the Court concludes that Defendants are not entitled to immunity under the IDVA at this stage.

The Court notes potentially contrary authority in *Lacey v. Village of Palatine*, 904 N.E. 2d 18, 28 (Ill. 2009). In *Lacey*, the estate of Mary Lacey brought suit against the Village of Glenview and Village of Palatine, alleging that officers had willfully and wantonly failed to protect her from domestic violence at the hands of her boyfriend, and she was killed by her boyfriend as a result. *Id*. 353-56. Officers had been aware that Lacey's boyfriend had attempted to hire someone to kill Lacey in October 2004. *Id*. Lacey's boyfriend murdered her in December 2004. *Id*. The Illinois Supreme Court found that the plaintiff had not demonstrated that the defendants were "enforcing" the IDVA at the time of Lacey's death, and that defendants had no open-ended duty to protect Lacey. *Id.* at 364-65. Therefore, the broader immunity provisions of the Illinois Tort Immunity Act applied, rather than the immunity provision of the IDVA, and the court granted summary judgment in favor of defendants. *Id.* at 368-69.

Here, Plaintiff has made a more specific claim. Plaintiff has alleged that Defendants failed to use reasonable means to protect her, such as by failing to remove Omo-Osagie's

weapons, when Defendants were enforcing the IDVA. This distinguishes Plaintiff's complaint from the allegations of an open-ended duty to protect discussed in *Lacey*. To the extent Defendants maintain that this case is sufficiently similar to *Lacey* that *Lacey* should control, this is likely to turn on factual disputes more appropriately resolved at a later stage in litigation.

*2. Duty Under the Illinois Domestic Violence Act*

Second, Defendants argue that under the IDVA, there is no open-ended duty on the part of law enforcement officials to protect victims. Defendants rely on *Lacey v. Village of Palatine*, 904 N.E. 2d 18, 28 (Ill. 2009) to argue that such an everlasting duty would be contrary to the intent of the IDVA, which limits the duration of the duty of protection.

The IDVA creates a duty to protect as a solution to the ineffective handling of domestic violence in the legal system. 750 ILCS 60/102(3). Generally, "whenever a law enforcement officer has reason to believe that a person has been abused, neglected, or exploited by a family or household member, the officer shall immediately use all reasonable means to prevent further abuse . . . ." 750 ILCS 60/304.

Defendants rely on *Lacey* to assert that they did not owe an open-ended duty to Plaintiff to protect her from domestic violence. *Lacey*, 904 N.E.2d at 28. Plaintiff responds that *Lacey* is not controlling due to factual distinctions. In *Lacey*, the police had conducted a thorough investigation of the attempted murder-for-hire, and had closed the investigation. In contrast, Plaintiff argues that Defendants were still "enforcing" the IDVA at the time of Plaintiff's injury. Plaintiff notes that "ordinarily, the determination of whether an officer was enforcing the law is a question of fact that must be determined by the trier of fact in light of the circumstances of each case." *Lacey*, 904 N.E.2d at 28. Enforcement of the law is rarely a single, discrete act, but is instead a course of conduct. *Id.* at 26.

This Court agrees that Plaintiff's case differs from *Lacey*. Plaintiff alleges that in several instances Defendants failed to immediately employ reasonable means to prevent abuse, and as a result of these failures to enforce the IDVA, Plaintiff suffered injury. In *Lacey*, police had closed the investigation and were no longer enforcing the IDVA. *Lacey*, 904 N.E. 2d at 28. In the instant case, Plaintiff has alleged no close to the investigation occurred. Rather, Plaintiff

alleges that in multiple instances, Defendants were aware of abuse perpetrated by Omo-Osagie, but failed to take reasonable steps to prevent further abuse. This Court concludes that, for the purposes of pleading, Plaintiff has adequately alleged a plausible claim against Defendants for violation of IDVA.

*D. Counts V & VI- Infliction of Emotional Distress*

Defendant argues that the counts of infliction of emotional distress are not properly pled and must be dismissed. This Court has already granted Plaintiff's motion to dismiss Counts V and VI without prejudice. This aspect of Defendants' motion is moot.

### IV. Summary

For the reasons stated above, this Court recommends that Defendants' Motion to Dismiss (**#35**) be **DENIED** as to Counts I through IV. Defendants' motion is **MOOT** with respect to Counts V and VI. However, the Court recommends that Defendants' request that the claim for punitive damages against the sheriff in his official capacity be stricken from the Complaint be granted.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 8th day of September, 2011.

                                                                                        s/ DAVID G. BERNTHAL
                                                                                           U.S. MAGISTRATE JUDGE